Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 687 | **DATE** | 4/29/2002 |
| **CASE TITLE** | PETER G. et al vs. CHICAGO PUBLIC SCHOOL DIST. 299 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 5/14/2002 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, plaintiff's motion for a statutory injunction, or in the alternative, a preliminary injunction is denied. The parties are to conduct an FRCP 26(f) conference and file a form 35 by May 9, 2002. Status hearing is set for May 14, 2002 to set a discovery and trial schedule.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | APR 3 0 2002 | 17 |
| ✓ | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 4/26/2002 date mailed notice | |
| JS | courtroom deputy's initials | 02 APR 30 AM 7:54 Date/time received in central Clerk's Office | JS mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PETER G., a Minor and  )
GREGORY G. and INEZ G., Individually and  )
as Parents and Next Friend of Peter G.,  )
)
Plaintiffs,  )
)   No. 02 C 0687
v.  )
)                                                **DOCKETED**
CHICAGO PUBLIC SCHOOL  )
DISTRICT NO. 299 BOARD OF  )                     APR 3 0 2002
EDUCATION and ILLINOIS STATE  )
BOARD OF EDUCATION,  )
)
Defendants.  )

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On January 28, 2002, plaintiffs Peter G. ("Peter") and his parents Gregory G. and Inez G. (collectively, "plaintiffs") initiated the present proceeding in this court pursuant to 20 U.S.C. § 1415(i)2) in order to appeal the administrative decisions of Richard Brimer, an independent hearing officer appointed by the defendant Illinois State Board of Education ("ISBE"). Specifically, plaintiffs appeal Mr. Brimer's administrative decisions upholding the defendant Chicago Public School District No. 299 Board of Education's ("CPS") placement of Peter for the 2001-2002 school year at Blaine Elementary School. On March 4, 2002, plaintiffs filed a motion for a statutory injunction or in the alternative, a preliminary injunction, seeking an order allowing Peter to continue attending the private school he is currently attending, St. Andrew School ("St. Andrew"), and receive

1

supportive services from the Belle Center at the expense of defendants during the pendency of the plaintiffs' appeal of Mr. Brimer's administrative decisions. For the following reasons, plaintiffs' motion for statutory or preliminary injunction is denied.

## STATEMENT OF FACTS

Peter is a 4½ year old boy who has Downs Syndrome and pervasive developmental disorder ("PDD"). CPS completed an individualized education program for Peter in July, 2000 ("2000 IEP") and found Peter eligible for special education services. The 2000 IEP noted that Peter communicates in sign language and found Peter eligible for speech and language services, occupational therapy and physical therapy, and provided placement in a regular pre-school classroom for Peter. While the 2000 IEP conference developed an IEP on behalf of Peter, the record does not indicate that the 2000IEP determined Peter's placement at a specific school for the 2000-2001 school year. In September, 2000, Peter's parents placed Peter at St. Andrew, a private school in Chicago and arranged for speech and language services, and occupational therapy and physical therapy to be provided by Belle Center, a private company. Peter's parents paid for the costs Peter's tuition at St. Andrew and related services Peter was receiving from Belle Center.

In December, 2000, Peter's parents initiated a due process hearing to redress the failure of CPS to implement Peter's 2000 IEP by failing to offer Peter an appropriate placement and supportive services fo the 2000-2001 school year. On the day the due process hearing was scheduled to begin, the parties reached a settlement agreement. Under the settlement agreement, and as memorialized in an Agreed Order entered by Hearing Officer Marie Bracki on June 2, 2001 ("Agreed Order"), (Am. Compl. Ex. C), CPS agreed to reimburse Peter's parents for tuition and all related services from Peter's birthdate until August 2, 2001, including tuition and fees, related services, and six

2

weeks of extended school year, also including related services. The Agreed Order also stated that an IEP conference would be convened by the end of July 2001 to determine Peter's placement for the next year and the related services that would accompany it.

CPS convened an IEP conference on July 23, 2001. The IEP produced that day ("2001 IEP") found Peter eligible for special education services, and provided for placement in a regular pre-school classroom, with supportive services including speech and language services, occupational therapy and physical therapy provided to be provided in the classroom. The 2001 IEP also noted that Peter communicates in sign language and the IEP provided for the use of "total communication." During the 2001 IEP conference, certain CPS staff reported an intent to place Peter at Brenneman Elementary school ("Brenneman"), a CPS school. Peter's parents then initiated a second request for a due process hearing with respect to Peter's placement at Brenneman. ISBE appointed independent hearing officer ("IHO") Richard Brimer ("Brimer") to preside over this due process hearing. In August, 2001, Peter's parents filed a motion for an interim order determining that Peter's placement for purposes of the Individuals with Disabilities Education Act ("IDEA") "stay-put" provisions to be St. Andrew School, and further directing that CPS maintain that placement during the pendency of the appeal. In September 2001, while Peter's parents' motion for an interim order was pending, Peter's parents re-enrolled Peter at St. Andrew with related supportive services from the Belle Center at their own expense.

In October, CPS changed its proposed placement for Peter from Brenneman to Blaine Elementary School ("Blaine"), which is the school that serves the area where Peter resides. Also in October, IHO Brimer entered a Preliminary Decision ("Preliminary Decision") which found Peter's placement for purposes of the IDEA "stay-put" provisions to be Blaine, the placement proposed by

3

CPS in the 2001 IEP. (Am. Compl. Ex. J-5.) The second due process hearing was conducted over five days in October and November, 2001. IHO Brimer issued a Decision and Order on December 15, 2001 which upheld the CPS decision to place Peter in a pre-school classroom at Blaine. CPS requested a clarification of the Decision and Order and on December 27, 2001, IHO Brimer issued a Clarification of his Decision and Order. (Am. Compl. Ex. L.) On January 28, 2002, plaintiffs initiated a timely appeal of IHO Brimer's Decision and Order upholding the CPS decision to place Peter at Blaine. On March 4, 2001, plaintiffs filed the instant motion before this court for a statutory injunction and other relief to enjoin CPS and ISBE to maintain and fund Peter's private schooling at St. Andrew during the pendency of plaintiffs' appeal of IHO Brimer's Decision and Order.

## ANALYSIS

I. IDEA "Stay-put" Provision - Automatic Statutory Injunction

The purpose of the IDEA, formerly known as the Education of All Handicapped Children Act, is to assure "that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c) (Supp.1998) (redesignated as § 1400(d)(1)(A)). For that reason, school officials and parents meet to discuss and develop an individualized education program ("IEP") for the child. "The IEP, which sets forth the child's educational level, performance, and goals, is the governing document for all educational decisions concerning the child." Board of Educ. of Community High School Dist. No. 218, Cook County, Ill. v. Illinois State Bd. of Educ., 103 F.3d 545, 546 (7th Cir.1996). The school district must also attempt to place the disabled child in the "least restrictive environment," or, in other words, it must, "to the maximum extent appropriate," educate the disabled child among non-disabled children. 20 U.S.C. § 1412(5)(B) (Supp.1998)

4

(redesignated as § 1412(5)(A)).

Because the IEP is controlling, the IDEA provides several procedural safeguards to protect the rights of the child in question. See 20 U.S.C. § 1415(a) (Supp.1998). For example, the IDEA requires that a school district notify the child's parents of any proposed changes in the child's educational program. 20 U.S.C. § 1415(c) (redesignated as § 1415(b)(3)). If the parents do not agree with the proposed IEP, they may seek an impartial administrative hearing on the matter, and may appeal any adverse decision to a state or federal court. 20 U.S.C. § 1415(e)(2) (redesignated as § 1415(i)). The IDEA also mandates that during the pendency of any such hearings conducted pursuant to the IDEA, the child shall remain in his or her then-current educational placement unless the State or local educational agency and the parents otherwise agree.[1] 20 U.S.C. § 1415(e)(3) (redesignated as § 1514(j)); see also Board of Educ. No. 218, 103 F.3d at 546-47 (7th Cir.1996) (describing the IDEA safeguards); Susquenita School Dist. v. Raelee S. by and through Heidi S., 96 F.3d 78, 82 (3d Cir.1996) (same). The purpose of this provision, otherwise known as the "stay put" or "pendent placement" provision, is to ensure that the educational needs of the child continue to be met while the hearings and any ensuing litigation proceeds. Board of Educ. No. 218, 103 F.3d at 546.

---

[1] The full text of 20 U.S.C. § 1415(e)(3) states:

Except as provided in subparagraph (B), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child, or if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

The relevant Illinois statute provides parallel language: "unless the school district and the parents or guardian of the student otherwise agree, the student shall remain in his or her present educational placement...." 105 ILCS 5/14-8.02a(j) (Supp.1997).

It is this provision that is the subject of the controversy between the parties in this case.

In the instant motion, plaintiffs seek either an automatic statutory injunction keeping Peter at St. Andrew School pursuant to the IDEA "stay-put" provision, or in the alternative, a preliminary injunction to assure Peter remains at St. Andrew pending decision of plaintiffs' appeal. The first issue is whether the IDEA "stay-put" provision acts as an "automatic statutory injunction" that relieves the court from having to engage in the traditional four-part balancing test used for determining the appropriateness of preliminary injunctions. The Seventh Circuit has not addressed this issue definitively, but its discussion of the "stay-put" provision in several cases provides a great deal of guidance. See Board of Educ. No. 218, 103 F.3d at 550 (treating the stay-put order as a statutory injunction); Rodiriecus L. v. Waukegan School Dist. No. 60, 90 F.3d 249, 254 (7th Cir.1996) (engaging in the four part balancing test with regard to the stay put order); Board of Educ. of Oak Park & River Forest High School Dist. 200 v. Illinois State Bd. of Educ., 79 F.3d 654, 657 (7th Cir.1996) (suggesting that the stay put order might qualify as a statutory injunction). In Rodiriecus, where the court treated the stay put order as a preliminary injunction, it did so because the child at issue had not been identified as disabled under the IDEA, and imposing an automatic statutory injunction would allow any expelled child to remain in school pending a hearing. See Board of Educ. No. 218, 103 F.3d at 550 (discussing Rodiriecus). Distinguishing Rodiriecus on those facts, the Seventh Circuit most recently stated in Board of Educ. No. 218, that the "equitable balancing reserved for preliminary injunctions has no place" where the child at issue had been identified as disabled and had an IEP. Id. The instant case is analogous to Board of Educ. No. 218 because Peter has clearly been identified as disabled under IDEA and has had an IEP prepared on his behalf. Accordingly, this court finds that it would be inappropriate to engage in the four-part balancing

inquiry in this case, and the stay-put order functions as an automatic statutory injunction here. See also Drinker by Drinker v.. Colonial School Dist., 78 F.3d 859, 864 (3d Cir.1996) (citing Zvi D. by Shirley D. v. Ambach, 694 F.2d 904, 906 (2d Cir.1982) for the proposition that the stay put order functions as an ("automatic" injunction). The issue at the crux of this motion, therefore, becomes which school the applicable "stay-put" placement contemplates Peter will attend during the pendency of the plaintiffs' appeal.

II. "Stay-Put" Placement

The stay-put provision states that "a child shall remain in the then-current education placement of the child" while any administrative or judicial proceedings are pending, unless the parents and the school district otherwise agree to change the student's placement. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.514. At issue in this motion is what school constitutes Peter's "then-current education placement"within the meaning of the stay-put provision. In October, 2001, after plaintiffs requested a due process hearing to review CPS' placement of Peter at Blaine Elementary School, IHO Brimer issued a Preliminary Decision which found Peter's placement for purposes of the IDEA "stay-put" provisions to be Blaine Elementary School, the placement proposed by CPS at Peter's 2001 IEP meeting. (Am. Compl. Ex. J-5.) Defendants argue it follows that the "then current educational placement" of Peter was Blaine, and the stay-put placement specified and ordered by IHO Brimer functions as an automatic statutory injunction and is Peter's stay-put placement during the pendency of this litigation. According to plaintiffs, however, IHO Brimer erroneously decided Peter's stay-put placement in his Preliminary Decision and the appropriate "stay-put" placement for Peter is instead St. Andrew. Plaintiffs point to the fact that Peter's parents and CPS entered into an Agreed Order whereby CPS agreed to reimburse Peter's parents for Peter's

7

tuition for the 2000-2001 school year and that because of this Agreed Order, St. Andrew was the last agreed-upon placement for Peter and therefore, is the appropriate stay-put provision during the pendency of this judicial proceeding.

In his Preliminary Decision concluding that Peter's stay-put placement was Blaine, IHO Brimer reasoned that when a parent's complaint involves a child's initial admission into a school district, in order to meet its obligation under the stay-put provision, the school district is responsible for providing the child with a free and appropriate public education ("FAPE") during the pendency of judicial proceedings. The school district, therefore, should place the child, with the consent of the parents, in a public school program until the completion of authorized proceedings. IHO Brimer concluded, therefore, that the initial placement of the child would constituted the proposed school district placement. In Peter's case, Brimer concluded that Peter's initial placement was Blaine, the placement proposed by CPS at the July 2001 IEP meeting. Brimer found that the Agreed Order between Peter's parents and CPS in which CPS agreed to reimburse Peter's parents for Peter's tuition at St. Andrew for the 2000-2001 school year was not Peter's initial educational placement. Upon review of the record and relevant caselaw, this court does not find that Brimer erred in his determination of the appropriate stay-put placement for Peter during the pendency of this appeal.

As Brimer discussed in his Preliminary Decision, this court also finds the Second Circuit case of Zvi D. v. Ambach, 694 F.2d 904 (2nd Cir. 1982) instructive. In Zvi D., the parent of Zvi, a child with minimal brain dysfunction, enrolled Zvi in a private school and requested evaluation by the school district and board of education to determine Zvi's eligibility to receive public funding for his private schooling. Zvi, 694 F.2d at 907. The school district recommended a free appropriate public education placement for Zvi and his parent contested this initial placement. Id. Before the

appropriateness of the school district's recommendation could be reviewed, the parties came to a settlement agreement by which the school district would reimburse the parents for Zvi's tuition at the private school for a definite time period and that a review would occur at the end of the time period with a view toward placing Zvi in an appropriate public program. Id. At the end of this time period, the school district placed Zvi in a public school program and Zvi's parent challenged this placement, maintained Zvi at the private school, and sought to enjoin the Board of Education to fund Zvi's private schooling. Id. at 908. The Second Circuit held that Zvi's parent did not establish that the private school was Zvi's "current educational placement" within the meaning of the stay-put clause. Id. The court found that the stipulation between the parents did not constitute a public agency placement of Zvi nor did the school district at any time determine that the parent's private placement of Zvi was appropriate, and therefore, the school district's placement at the public school was the initial placement and appropriate stay-put placement for Zvi. Id. In addition, the court noted that because the agreement expressly limited the school district's financial responsibility, the private school was not the child's current educational placement within the meaning of the stay-put provision. Id.

Likewise, in this case, this court finds that although Peter was actually attending St. Andrew at the time of his 2001 IEP, St. Andrew was not his "then-current educational placement" within the meaning of the stay-put provision. The inquiry into what Peter's "then-current educational placement" is under the stay-put provision is a procedural safeguard to ensure that a school district continues to finance an educational placement made by the agency before the parent requested a due process hearing. However, Peter's attendance at St. Andrew and CPS reimbursement of his tuition for the 2000-2001 school year was pursuant to the private settlement agreement between the parties.

9

Peter's parents placement of Peter at St. Andrew in September 2000 did not constitute a public agency placement of Peter; the CPS did not review this placement or make any determination as to the appropriateness of placement at St. Andrew. When deciding on a placement for a child to ensure that an educational program is tailored to the specific needs of the disabled child, the parents, teacher, and a representative of the local education agency must collaborate to design and IEP for the child. Board of Educ. of Community High School Dist. No. 218, Cook County, Ill. v. Illinois State Bd. of Educ., 103 F.3d 545, 546 (7th Cir.1996). There is no evidence that Peter's placement at St. Andrew was a result of any such collaboration. This court finds that the 2001 IEP conference was, however, such a collaboration and CPS' placement of Peter at Blaine constitutes initial educational placement at Blaine.

The purpose of IDEA's stay-put provision is to ensure the educational needs of a child are met during the pendency of any proceedings conducted pursuant to the IDEA. Bd. of Educ. No. 218, 103 F.3d at 546. While this court appreciates Peter's parents desire to maintain Peter at St. Andrew where he has been for over a year, Peter's IEP, which sets forth the Peter's educational level, performance, and goals, "is the governing document for all educational decisions concerning the child," Id., and in order to ensure that Peter's needs are met in the interim, this court must look to the "governing" 2001 IEP. Peter's parents have the right, as they have exercised, to seek review of whether Peter's placement at Blaine is appropriate for Peter's needs. However, during this review of Peter's initial placement, Peter has the right to an education at Blaine funded by CPS, or if his parents so choose, he may remain at St. Andrew at his parent's expense.

## CONCLUSION

For all the reasons articulated in this memorandum and order, plaintiffs' motion for a statutory injunction, or in the alternative, a preliminary injunction is denied. Counsel are to hold a conference pursuant to Federal Rule of Civil Procedure 26(f) and jointly file a completed Form 35 on or before May 9, 2001. The case is set for report on status and entry of a scheduling order at 9:00a.m. on May 14, 2001. The parties are urged to discuss a possible settlement of this case.

ENTER:

_James F. Holderman_
JAMES F. HOLDERMAN
United States District Judge

DATE: April 29, 2002